EXHIBIT A

2026 WL 751167
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

## CADENCE DESIGN SYSTEMS, INC., Plaintiff,

v.

## YUNJING INTELLIGENT INNOVATION (SHENZHEN) CO., LTD., et al., Defendants.

Case No. 25-cv-00317-AMO
|
Filed 03/17/2026

### Attorneys and Law Firms

Ahmed ElDessouki, Pro Hac Vice, Gibson, Dunn & Crutcher LLP, New York, NY, Christina E. Myrold, L. Kieran Kieckhefer, Gibson, Dunn & Crutcher LLP, San Francisco, CA, Ilissa S. Samplin, Shaun A. Mathur, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, for Plaintiff.

Benjamin Bai, Pro Hac Vice, King & Wood Mallesons, New York, NY, Chao Wendy Wang, Baker Botts LLP, Palo Alto, CA, Jack Shaw, William David Ellerman, Pro Hac Vice, Cherry Johnson Siegmund James PC, Dallas, TX, Alison Karol Sigurdsson, Erik Isaac Perez, Baker Botts LLP, San Francisco, CA, Chuantong Wang, Baker Botts LLP, Houston, TX, Haolu Feng, Pro Hac Vice, McLean, VA, Kris Teng, Pro Hac Vice, Zhe Wang, Pro Hac Vice, Bayes PLLC, McLean, VA, for Defendant Yunjing Intelligent Innovation (Shenzhen) Co., Ltd.

Benjamin Bai, Pro Hac Vice, King & Wood Mallesons, New York, NY, Chao Wendy Wang, Baker Botts LLP, Palo Alto, CA, Jack Shaw, William David Ellerman, Pro Hac Vice, Cherry Johnson Siegmund James PC, Dallas, TX, Alison Karol Sigurdsson, Baker Botts LLP, San Francisco, CA, Chuantong Wang, Baker Botts LLP, Houston, TX, Haolu Feng, Pro Hac Vice, McLean, VA, Kris Teng, Pro Hac Vice, Zhe Wang, Pro Hac Vice, Bayes PLLC, McLean, VA, for Defendants Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., Yunjing Intelligence (Shenzhen) Co., Ltd.

## ORDER RE DEFENDANTS' MOTION TO DISMISS

ARACELI MARTÍNEZ-OLGUÍN United States District Judge

**\*1** Cadence Design Systems, Inc. brings this suit against Defendant Yunjing Intelligent Innovation (Shenzhen) Co., Ltd. and its wholly owned subsidiaries, Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., and Yunjing Intelligence (Shenzhen) Co., Ltd. Yunjing Intelligence Robotics, and the various subsidiaries, do business under the trade name "Narwal." The Complaint asserts two causes of action: 1) violation of the Digital Millenium Copyright Act ("DMCA"), specifically 17 U.S.C. § 1201; and 2) breach of Cadence's Software License and Maintenance Agreement ("SLMA"). Defendants move to dismiss both claims under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) for lack of personal jurisdiction, improper venue, and failure to state a claim.

Defendants filed their motion to dismiss on April 21, 2025. Dkt. No. 32.[1] While briefing was ongoing, Defendants also moved to stay discovery pending resolution of the motion, given their challenges to jurisdiction. Dkt. No. 42. In the alternative, Defendants requested the Court limit initial discovery to jurisdictional issues. Dkt. No. 48 at 11. The Court granted the motion to stay discovery on this alternative basis and indicated the parties may seek leave to file supplemental briefs on the pending motion to dismiss based on the outcome of jurisdictional discovery. *See* Dkt. No. 62. The parties submitted their respective motions for leave to file supplemental briefs on November 18, 2025. *See* Dkt. Nos. 77, 80. Both motions are **GRANTED**, and the Court deems the briefs submitted for purposes of resolving the motion to dismiss. Additionally, on January 26, 2026, Cadence filed a motion to supplement the record with information from two antitrust lawsuits advanced by Defendants against Cadence's Shanghai-based subsidiaries in the Chinese courts. Dkt. No. 85. Defendants oppose.

Accordingly, two motions remain before the Court: Defendants' motion to dismiss the Complaint and Cadence's motion to supplement the record. The parties stipulated to having the motion to supplement the record decided without oral argument. Dkt. No. 88. Pursuant to that stipulation, the

Court decides the motion on the papers, and the motion is **DENIED**, as the documents Cadence seeks to add to the record are unnecessary for resolution of the motion to dismiss. As for the motion to dismiss, having considered the parties' submissions, and with the benefit of oral argument heard on February 26, 2026, the Court **DENIES** Defendants' motion.

**FACTUAL BACKGROUND**

This section comprises the well-pleaded allegations from the Complaint in addition to certain evidence submitted by the parties to build out the record on personal jurisdiction.

### A. Complaint Allegations

Cadence develops and sells proprietary electronic design automation ("EDA") software. Dkt. No. 1 ¶ 2. This EDA software can be used by semiconductor manufacturers, car makers, wireless technology makers, and other precision manufacturers "to design, model, and optimize printed circuit boards and semiconductor chips." *Id.* ¶ 16. Cadence owns a registered U.S. copyright for its products, and in order to use the EDA software, customers obtain a license for use and pay ongoing license fees. *Id.* ¶ 2.

**\*2** To protect its software from unauthorized use, Cadence employs certain safeguards. For instance, Cadence's software products "will not operate unless a user first installs the Cadence License Manager" ("CLM"). *Id.* ¶ 21. The CLM is a software management tool that "is typically installed on a server maintained by the user," and is accessible by a network of the user's computers that will install any of the Cadence software products. *Id.* ¶¶ 21-22. When purchasing Cadence products, a customer pays for a certain number of licenses, which limits the maximum number of simultaneous users for a given software. *Id.* ¶ 24. As an example, "if a customer licenses four copies of Cadence Allegro®, then that customer's end users are permitted up to four instances of Cadence Allegro® software at the same time." *Id.* Cadence ensures these user limitations through the CLM and "license files." When a customer purchases licenses, Cadence generates a license file, which the customer then enters into the CLM to access the software. *Id.* ¶ 23. This license file limits the number of licenses and is unique to the server's HostID, i.e. the license file will only work on the customer's server. *Id.* ¶¶ 23-24.

In order to install the CLM on a server, the user must first accept the terms of Cadence's SLMA. *Id.* ¶ 27. "If the user does not select the 'I accept' option, or if the user selects 'I do not accept the terms of the license agreement," the user cannot proceed with installation of the [CLM]." *Id.* ¶ 34. Moreover, for each subsequent software product licensed by the user within the CLM, the user must once again agree to the SLMA, or they cannot proceed with installing the specific software product. *Id.* ¶ 35. Depending on the version of the associated software, the terms can vary, but Cadence asserts versions 16.5 and 16.6 are relevant to the instant case. *Id.* ¶ 28.

These versions of the SLMA contain various terms, including that users are required:

> "[T]o take all reasonable steps and to exercise due diligence to protect the [Cadence Software] from unauthorized reproduction, publication, or distribution." *Id.* ¶ 30.

> To "have a reasonable mechanism in place to ensure that the Software may not be used or copied by unlicensed persons." *Id.*

> To "keep full and accurate records to confirm [their] authorized Use of the [Cadence Software]." *Id.* ¶ 31.

Cadence also has a right under the agreement to audit those records of compliance and require the user to correct any deficiencies therein as well as pay for any shortfall in fees. *Id.* Though Defendants are not current customers, Cadence alleges they agreed to the SLMA when using Cadence software products without authorization. *Id.* ¶¶ 29, 37. Defendants allegedly obtained unauthorized, or "cracked," copies of the software from third-party file-sharing and bit-torrent sites that allowed access to the product without a valid license file from Cadence. *Id.* ¶¶ 38-40. Cadence further avers Defendants used "counterfeit license files" to gain this access. *Id.* ¶ 41.

To support these allegations, Cadence discusses its Phone Home System, a license compliance software that detects tampering and transmits data on unauthorized use back to Cadence. *Id.* ¶ 26. This Phone Home System detected over 200,000 instances of unauthorized use by Defendants. *Id.* ¶ 42. Since at least 2024, Cadence has allegedly sent letters to Defendants regarding these findings and requesting an audit per the SLMA. *Id.* ¶ 44. Defendants have not complied and allegedly continue their unauthorized use. *Id.* ¶¶ 44-45.

### B. Declaration of Panbing Lu

In support of the motion to dismiss, Defendants submit the sworn declaration of Panbing Lu, Legal Counsel for Yunjing Intelligent Innovation (Shenzhen) Co., Ltd. Dkt. No. 33. The declaration provides a number of facts to contest the jurisdictional allegations in the Complaint. Lu states the defendant companies are based in China, conduct no operations in the United States, and have no employees, technology, or equipment located here. *Id.* ¶¶ 4-9. Further, Lu asserts the Defendants have strict IT and Information Security policies that prohibit employee use of unlicensed software, or agreement to any contractual terms without affixing the company's seal. *Id.* ¶¶ 10-12.

### C. Jurisdictional Discovery

**\*3** Pursuant to the Court's order, the parties exchanged limited discovery on the question of personal jurisdiction. In their respective supplements to the motion to dismiss briefing, the parties lay out additional relevant facts. Defendants produced a number of documents including internal policies on cybersecurity, contract management, and information security management. *See* Dkt Nos. 79-17, 79-19, 79-21, 79-23. They also produced marketing agreements indicating certain social media advertising deals and promotion of their products at a conference in Nevada. *See* Dkt. Nos. 79-9, 79-11, 79-13, 79-15. Further, in response to Cadence's interrogatories, Defendants provided a link to a third-party website, which they identify as the source of Cadence software that was used on any computers in their control. Dkt. No. 79-4 at 11. They note the website includes video instructions on how to install the Cadence software, and they state, "the installation is performed automatically without offering any opportunity for the installer to check the box related to the SLMA." *Id.* "[I]nstallation and subsequent use of the [software] can be carried out without internet connection." *Id.* Cadence produced excel files of the Phone Home System data underlying the Complaint, which includes at least 80 discrete usernames associated with email accounts ending in the company domain "narwal.com." Dkt. No. 77-2 ¶ 13; *see also* Dkt. Nos. 77-28, 77-29. These usernames utilized Cadence software without authorization over 200,000 times between January 2022 and July 2025. Dkt. No. 77-2 ¶ 16.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss the complaint for lack of personal jurisdiction. "Where a defendant moves to dismiss a

complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "The court assumes the truth of any uncontested allegations, but a defendant may dispute facts through supporting affidavits or evidence. Once the defendant has raised a factual dispute as to the complaint's jurisdictional allegations, the burden shifts to the plaintiff to 'make a *prima facie* showing of jurisdictional facts.' " *In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2025 WL 986959, at \*3 (N.D. Cal. Apr. 2, 2025) (internal citations omitted).

A defendant may also move to dismiss for improper venue. *See* Fed. R. Civ. Pro. 12(b)(3). Similar to a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). Courts generally look to 28 U.S.C. § 1391 to determine the propriety of venue. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* at 56.

As for Defendants' Rule 12(b)(6) motion: "To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Iqbal* and *Twombly*, plaintiffs' allegations must suggest that their claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (cleaned up). The district court must assume the plaintiffs' allegations are true and draw all reasonable inferences in their favor. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022). However, the court need not construe conclusory statements or unreasonable inferences as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### DISCUSSION

First, the Court considers the parties' arguments with respect to the motion to supplement the record for the pending motion to dismiss. Then, the Court turns to Defendants' substantive bases for dismissal. In sum, Defendants raise four arguments: 1) the Court lacks personal jurisdiction because

there is no valid forum-selection clause between Defendants and Cadence, nor did Defendants purposefully direct conduct at the forum; 2) the case should be dismissed under the doctrine of *forum non conveniens* because the proper venue is in China; 3) Cadence's copyright claim fails because the DMCA does not apply extraterritorially, and Cadence has not plausibly alleged a domestic application of the statute; and 4) there can be no breach of contract because no contract existed between the parties, and even if one did, the SLMA is unconscionable. The Court addresses each basis, and where appropriate, considers evidence outside the pleadings on questions of jurisdiction.

## I. MOTION TO SUPPLEMENT THE RECORD

 **\*4**  Cadence seeks leave to supplement the record considered by the Court in adjudicating the pending motion to dismiss. Dkt. No. 85. Defendants oppose. Dkt. No. 87. District courts have decided such motions based on whether there was "good cause" to permit supplemental material. *See, e.g., Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015) (noting the district court applied a "good cause" standard when deciding a motion to supplement the record); *FTC - Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, No. 5:19-CV-06590-EJD, 2020 WL 5545156, at \*3 (N.D. Cal. Sept. 16, 2020) (applying a "good cause" standard). Cadence's additional evidence comes from two Chinese antitrust lawsuits filed by one of the defendants against Cadence's subsidiary companies located in China. Dkt. No. 86. Cadence claims this evidence was not available during briefing on the motion because it was not aware of the suits until November 24, 2025. Dkt. No. 85 at 5. Further, it contends certain statements from those cases are relevant to the Court's resolution of the jurisdictional arguments in this suit. *Id.* at 6. The Court is not persuaded.

The documents appear to be civil complaints from the two suits as well as "evidence lists," which include certain articles and reports that support allegations made in those complaints. *See, e.g.*, Dkt. No. 86-4. Defendants dispute Cadence's interpretation of the allegations and the underlying news sources cited in the evidence lists. *See generally* Dkt No. 87. Ordinarily, if Cadence had sought judicial notice of such documents, the Court would not take notice of disputed material to resolve a motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take judicial notice of disputed facts contained in such public records."). To the extent the Court may consider supplementary materials where jurisdictional

allegations are disputed, allegations from a complaint in a different lawsuit would not ordinarily be persuasive evidence, as they are unproven. Moreover, the Court does not ultimately require additional evidence beyond that which was produced in jurisdictional discovery to resolve the instant motion.

Accordingly, the Court finds there is no good cause to expand the record on the motion to dismiss, since the proposed additional evidence would not aid the Court in resolving the motion. Cadence's motion to supplement the record is **DENIED**.

## II. PERSONAL JURISDICTION

To exercise personal jurisdiction over a nonresident defendant, the defendant must have at least "minimum contacts" with the forum "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). Personal jurisdiction can be either general or specific. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). General personal jurisdiction arises when "the defendant's contacts with the forum state [are] 'so continuous and systematic as to render [it] essentially at home in the forum State.' " *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (citation omitted). Here, Cadence brings a cause of action for the tort of circumvention of copyright protection systems. Dkt. No. 1 ¶¶ 46-52. To assess specific personal jurisdiction in tort cases, the court inquires "whether a defendant 'purposefully direct[ed] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation omitted). That said, the Ninth Circuit does not recognize " 'a rigid dividing line between' purposeful direction and purposeful availment, and the first prong of the personal jurisdiction test 'may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof.' " *Briskin*, 135 F.4th at 751 n.10 (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023)). Accordingly, the Court considers all evidence and well-pleaded allegations of Defendants' contacts with the forum—as well as the aiming of their alleged conduct—when determining whether Cadence has established personal jurisdiction.

 **\*5**  "Additionally, the Supreme Court has acknowledged that, because the personal jurisdiction requirement is a

waivable right, there are a variety of legal arrangements by which a litigant may give 'express or implied consent to the personal jurisdiction of the court." *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 588 (N.D. Cal. 2022) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)) (cleaned up). "This includes consenting to a court's jurisdiction by contract." *Id.* (citations omitted). Here, Cadence asserts Defendants consented to jurisdiction in this district via the SLMA's forum-selection clause. Defendants contest these allegations and contend no valid contract was ever formed between the parties, so the forum-selection clause has no effect. Separately, Cadence argues the Court has personal jurisdiction over Defendants based on the purposeful direction of their conduct toward the forum state. Defendants similarly deny any such connection to California. Since Defendants have challenged the factual basis for personal jurisdiction through the declaration of Panbing Lu, the burden shifts to Cadence to make a *prima facie* showing of jurisdictional facts. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

The Court first considers specific personal jurisdiction under the purposeful direction test, and then addresses the parties' arguments as to the enforceability of the SLMA's forum-selection clause.

### A. Purposeful Direction

Cadence does not contend the Court has general personal jurisdiction over Defendants in California. Therefore, the Court only determines whether Defendants are subject to specific personal jurisdiction. The specific personal jurisdiction test comprises three steps: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.' " *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). As previously noted, in tort cases, the Court typically applies the "purposeful direction" test at the first step of the specific personal jurisdiction analysis. *Yahoo! Inc.*, 433 F.3d at 1206. "[A] defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (citation omitted).

Here, Cadence has carried its burden to make a *prima facie* showing of jurisdiction. The parties focus on two aspects of the personal jurisdiction analysis: "express aiming," and whether Cadence's claims arise out of, or relate to, Defendants' contacts with the forum. The Ninth Circuit's survey of personal jurisdiction opinions in *Briskin* proves instructive on both points. There, the court analyzed whether Shopify, an e-commerce platform with a global presence, could be haled into federal court in California. *Briskin*, 135 F.4th at 747-49. Surveying the law on "express aiming," the court noted that Ninth Circuit precedent has looked to "whether the defendant 'individually targeted' a plaintiff known to be a forum resident" when establishing such aiming. *Id.* at 757 (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1229). Limited jurisdictional discovery has shown Defendants were aware of Cadence, and its location in the United States, at the time the alleged circumvention of Cadence's copyright protection measures occurred. Dkt. No. 79-5 at 11. Further, the license files that comprise part of those measures are generated and maintained in San Jose, California. Dkt. No. 1 ¶ 23. This comports with the Supreme Court's analysis in *Calder v. Jones*, 465 U.S. 783, 789-790 (1984), which held a California court had jurisdiction over Florida-based defendants who had published an allegedly libelous story about a California actress. In support of that conclusion, the Court observed that the defendants knew their allegedly tortious conduct "would have a potentially devastating impact upon [the plaintiff]" and "knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she lives and works ...." *Id.* at 789-90. So, too, here. Defendants knew of Cadence and its location in the United Stated and allegedly knew their circumvention of Cadence's security measures to gain unauthorized access to the software would impact Cadence there. "An individual injured in California need not go to [China] to seek redress from persons who, though remaining in [China], knowingly cause the injury in California." *Id.* at 790. So, under the first step of the specific personal jurisdiction test, Cadence has met its burden.[2]

**\*6** Turning to the second step of the specific personal jurisdiction test, Cadence has made a *prima facie* showing that its claims arise out of, or relate to, Defendants' forum-related conduct. As the *Briskin* court noted, the second step does not require a causal relationship between the defendant's contacts and the plaintiff's claims; rather, so long as the plaintiff "alleges the kind of injury that would 'tend to be caused' " by such contacts, there is specific personal jurisdiction. *Briskin*, 135 F.4th at 760. Under this standard, it is sufficient that Defendants allegedly employed counterfeit license files

to gain access to Cadence's software by avoiding the need for an authorized licensing file housed with Cadence in California. Dkt. No. 1 ¶¶ 40-41. Use of such counterfeit files that avoid a domestic cybersecurity measure are the kinds of contacts that would tend to cause a Section 1201 violation and a claim for breach of a licensing agreement. Yet even applying a causal requirement between Defendants' contacts and the claims at issue, it is clear that but for Defendants' alleged circumvention of security measures partially created and maintained in California, there would be no claim under 17 U.S.C. § 1201. Here too, Cadence has carried its burden to make a *prima facie* showing of jurisdictional facts.

To counter, Defendants argue this case is more like *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011), where the Supreme Court held the defendant lacked sufficient contacts with the state of New Jersey to permit specific personal jurisdiction. There, the defendant corporation did not have any property in the state, paid no taxes nor had employees there, did not advertise in the forum, and had never sent an employee into the state. *Id.* The only connection between the defendant and New Jersey was a few manufactured products that had ended up in the state via retail channels. *Id.* Defendants contend the same circumstances exist here, since Narwal does not have any employees, technology, or equipment in the United States and conducts no operations in any state. Dkt. No. 33 ¶¶ 4-9. Further, they assert no license file was created by Cadence in California because Defendants were never a customer, and thus the process was never triggered. In effect, Defendants contend that because no contact was made with any server in the United States, there is no jurisdictional hook. The Court disagrees. As the Court discusses more fully in Section IV.A., *infra*, Defendants rely on too narrow an understanding of the license file mechanism. Section 1201 prohibits circumvention of technological measures, which it defines to include a "process or a treatment" that allows access to a copyrighted work. 17 U.S.C. § 1201(a)(3)(B). Though a license file specific to Defendants may not have been created, the "process or treatment" that protects Cadence's work exists in California through the license file system itself. Cadence has alleged Defendants bypassed this measure, located in the United States, by employing counterfeit license files. This establishes a contact with California that satisfies the *Calder* effects test, and is further supported by Cadence's jurisdictional allegations related to Defendants' advertising.

**B. Forum-Selection Clause**

Additionally, Cadence alleges Defendants are bound by the SLMA, a clickwrap agreement users must accept through their installation of the CLM. The SLMA contains a forum-selection clause that requires consent to jurisdiction in California courts. Dkt. No. 28-1 at 8 ("You agree to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute."). Defendants rely on the declaration of Panbing Lu to deny any such contract was formed between the parties, Dkt. No. 33 ¶¶ 12-14, and in the alternative, argue the SLMA is unconscionable under California law, Dkt. No. 32 at 30-33. Considering the parties' declarations, and the evidence included in their supplemental briefing, the Court finds Cadence has made a *prima facie* showing of jurisdictional facts, namely that the SLMA's forum-selection clause applies.

Both parties rely on California law to support their respective positions. Though Defendants note there may be an open choice-of-law question as to whether Chinese law should govern contract formation, neither party engages in substantive analysis of the issue. *See* Dkt. No. 32 at 26; *see also* Dkt. No. 94 at 18 (counsel for Defendants noting they "don't have a clear answer" on the choice-of-law question). However, Defendants also state the Court need not decide the issue at this juncture. *Id.* The Court, therefore, does not consider the issue raised in this motion and proceeds with the contract formation analysis under California law, as the parties do.

**\*7** " '[C]lickwrap' agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed. Courts 'have routinely found clickwrap agreements enforceable,' because the consumer has received notice of the terms being offered and, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms." *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). Here, Cadence alleges both the CLM and use of individual Cadence software applications require the user to click a box to agree to the terms of the SLMA. Dkt. No. 1 ¶¶ 34-35. Jurisdictional discovery shows Defendants downloaded the "cracked" software from a third-party website, which employed a "one-click" installation that automated the process of clicking through the SLMA. Dkt. No. 79-4 at 11. Based on this evidence, the Court determines Cadence has met its burden to make a *prima facie* showing

of contract formation, and consent to jurisdiction via the SLMA's forum-selection clause.[3]

Defendants advance four arguments in response, none of which persuades the Court to change course. First, they argue the automated clicking process did not manifest assent to the terms of the SLMA. Second, they argue an employee using the "cracked" software cannot bind the defendant corporations to the terms of such a contract because they did not have authority to do so. Third, Cadence is not the "offeror" of the contract because Defendants did not download the software directly from Cadence. And fourth, even if a contract was formed between the parties, it is unconscionable, and therefore, void. The Court addresses each argument in turn.

To start, the automated installation of Cadence's software manifested Defendants' assent to the SLMA, even if the user did not move the cursor himself to click the box stating, "I agree." Under California law, "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023) (internal citations omitted). By choosing to utilize a third-party website to download and install Cadence software, Defendants *objectively* manifested assent to the SLMA because the one-click installer checked "I agree" to the terms. Whether a Narwal employee *subjectively* consented to the contract, or intended to be bound, is not the relevant inquiry. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1587 (2005) ("Mutual assent to contract is based upon objective and outward manifestations of the parties; a party's 'subjective intent, or subjective consent, therefore is irrelevant.' " (citation omitted).).

 **\*8** The only case Defendants cite that held no contract was formed under similar circumstances is unpersuasive. In *Ansys, Inc. v. SF Motors, Inc.*, No. 2:20-CV-00352-MJH, 2021 WL 22453, at *4 (W.D. Pa. Jan. 4, 2021), the defendant allegedly clicked "I agree" to a clickthrough licensing agreement when using a pirated version of the plaintiff's software. The district court determined there was no contract formed between the parties because there was a lack of consideration. *Id.* Since the defendants allegedly pirated the software, the court reasoned there was no exchange of money for a license, as contemplated by the agreement. *Id.* However, it is a fundamental principle of contract law that consideration does not have to be money; consideration may involve a promise, an act other than a promise, a forbearance, or the creation of a legal relationship between the parties. *See* Restatement (Second) of Contracts § 71 (1981). Here, both parties received certain rights under the SLMA, even if no formal exchange of money for a license occurred. Accordingly, the Court does not find *Ansys* persuasive on this point.

As for Defendants' second argument, Cadence has supplied evidence to support a *prima facie* showing that even if Defendants did not provide prior authorization to employees to enter into the SLMA, their conduct ratified the act:

> A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.'

*Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972) (citation omitted). Though Defendants rely on internal policies requiring approval for any employee to bind the company via contract, Cadence has provided evidence that Narwal issued job postings for engineers skilled in the use of Cadence's software. Dkt. No. 77-5. Cadence's products are not available for use without a license. Thus, job postings for engineers skilled in the use of that software is circumstantial evidence of Narwal's knowledge that employees needed to use, and were using, the "cracked" software. Coupled with the Phone-Home data indicating widespread use of the "cracked" software by over 80 different accounts, Dkt. No. 77-2 ¶ 13, Cadence makes a *prima facie* showing of ratification by Defendants.

Third, Defendants' contention that the "clickwrap agreement requires Cadence to present the terms" as opposed to the torrent site, lacks merit. Dkt. No. 32 at 28. Defendants argue that since they downloaded the "cracked" software from a third-party, the SLMA was not offered by Cadence, and therefore, no contract could be formed between the parties. However, the "offer" need not come from Cadence's website to come from Cadence. The SLMA document, available through the CLM, and whose terms can be viewed by any user before clicking the "I agree" box, states: "THIS SOFTWARE LICENSE AND MAINTENANCE AGREEMENT ("AGREEMENT") IS A LEGAL DOCUMENT BETWEEN YOU AND CADENCE DESIGN SYSTEMS, INC. ("CADENCE")." Dkt. No. 28-1 at

2. This kind of adhesion contract is take-it-or-leave it; it is not specific to any individual potential user. Indeed, the SLMA further states: "IF YOU DO NOT WANT TO BE BOUND BY THE TERMS OF THIS AGREEMENT, CADENCE IS UNWILLING TO LICENSE THE SOFTWARE TO YOU ...." *Id.* Per the contract, Cadence is the offeror, and "YOU" refers to *any* user of the Cadence software. The mere fact that the contract itself came to Defendants via an unconventional channel does not distort its terms. If Defendants were correct, delivery of a contract by someone other than an offeror—say a postal worker—would prevent contract formation. But that is not the law.

Last, Defendants assert the SLMA is unenforceable in three respects: 1) it does not specify the pricing terms; 2) it is unconscionable because it discriminates against non-English speakers; and 3) it is unconscionable because it does not bind Cadence via the forum-selection clause. Dkt. No. 32 at 32-33. To start, "[t]he absence of price provisions does not render an otherwise valid contract void." *California Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 482 (1955) (citation omitted). "Unless the parties intended to leave the determination of price to future negotiations, courts should make the necessary findings and set the price under the applicable code provisions." *Id.* The SLMA refers to a separate agreement on price— set out in the Product Quotation—and states Cadence will notify the customer 30 days before the close of the period about the payment terms for the subsequent period. Dkt. No. 28-1 at 6. To the extent there is a factual question about whether price could be objectively determined by evidence, or through a future Product Quotation, that question should be resolved with the benefit of full discovery. As for Defendants' unconscionability arguments, they similarly involve factual disputes that have not been addressed by the limited jurisdictional discovery the Court permitted, and thus do not warrant dismissal. *Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 644 (2010) ("[W]hile unconscionability is ultimately a question of law, numerous factual inquiries bear upon that question."). Other district courts have similarly declined to dismiss contract claims on the basis of unconscionability at the pleadings stage. *See, e.g., Teed v. Chen*, No. 22-CV-02862-CRB, 2022 WL 16839496, at *5 (N.D. Cal. Nov. 9, 2022) (The "unconscionability argument is unavailing at this stage because the question of whether a contract is unconscionable exceeds the scope of a 12(b)(6) motion.").

\* \* \*

**\*9** For these reasons, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction is **DENIED**.

## III. VENUE

Next, Defendants argue the Complaint should be dismissed because there is a more appropriate forum in China. Dkt. No. 32 at 19-20. "To grant a motion to dismiss on *forum non conveniens* grounds, a district court must determine '(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal.' " *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 693 (9th Cir. 2009). The private-interest factors include:

> ... the ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; other problems that interfere with an expeditious trial ... ; and the ability to enforce the judgment.

*Id.* at 695 (alterations in original). As for the public-interest factors, the Court must consider:

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; [and] (4) ... the avoidance of unnecessary problems in conflicts of law.

*Id.* (alterations in original). Where there is a valid forum-selection clause between the parties, the private-interest factors "weigh entirely in favor of the preselected forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). Given Cadence's *prima facie* showing of a valid forum-selection clause, the Court considers whether the public-interest factors require dismissal. However, "[b]ecause those factors will rarely defeat [the contractually selected forum], the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Here, the public-interest factors do not present the kind of unusual case that would warrant dismissal. Court congestion does not create any unique challenges in this case, as the Northern District of California does not face acute administrative difficulties with the size of the docket. *See, e.g., Eventbrite, Inc. v. Loranger*, No. 19-CV-04083-RS, 2019 WL 11499335, at *5 (N.D. Cal. Nov. 19, 2019) ("While the Northern District of California is a busy forum, there is no

overwhelming problem of court congestion ....”). As to the second and third factors, this case involves a dispute with an entity based in the Northern District and represents a local interest in enforcing United States law to protect copyrighted material developed here. Lastly, the SLMA provides that California law shall govern interpretation of the agreement, Dkt. No. 28-1 at 8, and California federal courts are well accustomed to interpretation of that law compared to the Chinese judiciary.

In sum, the private-interest and public-interest factors weigh in favor of maintaining the action in this district. Consequently, Defendants' motion to dismiss based on the doctrine of *forum non conveniens* is **DENIED**.

## IV. RULE 12(B)(6) MOTION

Under Rule 12(b)(6), Defendants move to dismiss both causes of action for failure to state a claim. Regarding the DMCA anti-circumvention claim, Defendants assert the Complaint alleges an impermissible extraterritorial application of the DMCA. As for the breach of contract claim, Defendants rely on the same arguments against contract formation that supported their position on personal jurisdiction. The Court now addresses each ground for dismissal.

### A. Digital Millenium Copyright Act Claim

**\*10**  Defendants assert the DMCA does not apply to wholly extraterritorial conduct, and so Cadence's claim must be dismissed because it fails to plausibly allege a domestic application of the statute. Dkt. No. 30 at 22-26.

“Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application.” *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). This presumption against extraterritoriality avoids international discord while reflecting the “commonsense notion that Congress generally legislates with domestic concerns in mind.” *Id.* at 335-36. The extraterritoriality analysis proceeds in two steps. “At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially.” *Id.* at 337. “If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's ‘focus.’ ” *Id.* “If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad;

but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.” *Id.* With respect to the DMCA, the Ninth Circuit has held U.S. copyright laws do not apply to extraterritorial acts of infringement. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (“[W]e reaffirm that the United States copyright laws do not reach acts of infringement that take place entirely abroad.”). So, the Court advances to step two of the analysis and considers the “focus” of the DMCA.

“The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate.” *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413-14 (2018) (cleaned up). Cadence asserts its claim under 17 U.S.C. § 1201, so the Court considers the “focus” of that provision. The statute involves “circumvention of copyright protection systems” and states: “No person shall circumvent a technological measure that effectively controls access to a work protected under this title.” 17 U.S.C. § 1201(a)(1)(A). Based on the statutory language, the “conduct” Section 1201 seeks to regulate is the “circumvention of copyright protection systems.” *See, e.g., Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) (identifying the “focus” of the statute as preventing “circumvention of technological measures to gain access to copyrighted works”). Having located the “focus” of Section 1201, the Court addresses whether Cadence has plausibly alleged circumvention of its technological measures domestically.

To start, the Court must identify the “technological measure” Defendants allegedly circumvented. The definitions housed within Section 1201 guide this inquiry. For instance, the statute provides: “a technological measure ‘effectively controls access to a work’ if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.” 17 U.S.C. § 1201(a)(3)(B). Further, “to ‘circumvent a technological measure’ means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.” *Id.* Relying on these statutory definitions, the parties present competing theories as to which alleged technological measure “effectively controls access to” the Cadence software. Defendants assert the CLM

controls access, while Cadence contends the license file controls access. The Court departs from these proffered readings, instead holding the "technological measure" is the CLM and the license file, together.

**\*11** Both parties rely on an unpublished Ninth Circuit decision, *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 23-55001, 2024 WL 3616945 (9th Cir. Aug. 1, 2024), as well as *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019), to support their respective interpretations. In *Superama*, the plaintiff alleged "[the defendant] applied ... hacking techniques to Superama's servers in the United States, circumventing their U.S.-based protection in order to permit a streamlined and unauthorized download of [Superama's] work." 2024 WL 3616945, at \*2. The plaintiff further alleged the defendant's "ripping of the U.S.-based video occurred ... in the [United States]." *Id.* On these allegations, the Ninth Circuit concluded the plaintiff could potentially allege a permissible domestic application of the DMCA, even if the defendant directed the conduct from abroad. *Id.* To support this conclusion, the court considered an analogy offered in the legislative history of the DMCA:

> [I]f unauthorized access to a copyrighted work is effectively prevented through use of a password, it would be a violation of this section to defeat or bypass the password and to make the means to do so, as long as the primary purpose of the means was to perform this kind of act. This is roughly analogous to making it illegal to break into a house using a tool, the primary purpose of which is to break into houses.

S. Rep. No. 105-190, at 11 (1998). Footnote 19 of the Congressional Report indicates the analogy refers, in part, to Section 1201(a)(2), which prohibits manufacture and distribution of tools used to circumvent copyright protection measures. S. Rep. No. 105-190, at 92 (1998); *see also* 17 U.S.C. § 1201(a)(2)(A)-(C). Observing as much, the court noted that for an anti-circumvention claim under Section 1201(a)(1), the critical fact is "the location of the lock, not the location of the tool used to circumvent it." *Superama Corp., Inc.*, 2024 WL 3616945, at \*2. From the court's analysis it is clear the "hacking techniques," or "ripping," constituted the "tool." However, the court does not specify the identity of the "lock." Indeed, the Ninth Circuit merely held the allegations of "ripping" the U.S. servers were enough to permit *amendment* so the plaintiff could flesh out the method of circumvention in greater detail. *Id.* at \*2 - \*3. The plaintiff's allegations indicated the "lock" could be located in the U.S., and further factual specificity was required.

Ultimately, the Court does not find the tool-and-lock analogy from this unpublished decision requires the "lock" to be a single technological feature. Rather, the statutory language provides the "technological measure" can "effectively controls access to a work" through "*a process* ... to gain access to the work." 17 U.S.C. § 1201(a)(3))((B) (emphasis added). As applied to the Complaint's allegations, Cadence avers Defendants "obtained counterfeit license files" from third-party sources "and used them to circumvent electronic protections built into the software." Dkt. No. 1 ¶ 40. Among the "protections" discussed in the Complaint, Cadence describes how a user must first install the CLM onto a server and then use a license file generated by Cadence to gain access to the software. *Id.* ¶¶ 21-25. Both features, combined, serve as a process for controlling access to Cadence's copyrighted material. A rigid formalism requiring either the CLM or the license file to constitute the "technological measure" does not square with the language of the statute or the allegations in the Complaint. Since Cadence alleges it generates and maintains the license file in this district, Dkt. No. 1 ¶ 23, the circumvention constitutes a domestic application of the DMCA.

The opinion in *Synopsys* does not disturb the Court's conclusion. There, the plaintiff alleged the defendant used "counterfeit license keys" to circumvent the plaintiff's software protections. *Synopsys, Inc.*, 401 F. Supp. 3d at 1071. "The central feature of [the plaintiff's] access-control measures is a license key system that requires licensees to input an encrypted key code that can only be obtained from Synopsys. The system monitors a licensee's use of the software to ensure compliance with the licensee's specific contract terms." *Id.* Additionally, "[t]he software will not run without the licensee 'checking out' a license key from a server that is designed to only grant such keys to approved licensees." *Id.* at 1072. In arguing the presumption against extraterritoriality applied, the defendants noted the "access" to the software occurred through servers located in China, since the defendant's Chinese business partner had provided allegedly valid licensed access. *Id.* at 1072-73. The district court rejected that argument, holding the conduct occurred within the United States. *Id.* at 1073. However, the court did not specify what it meant by "conduct," nor did it consider where the "technological measure" was located. On the question of extraterritoriality, then, *Synopsys* does not conclusively resolve the issue currently before the Court. For these reasons, the Court does not find *Synopsys* persuasive on this point.

**\*12** Therefore, the Court **DENIES** Defendants' motion to dismiss the DMCA claim.

### B. Breach of Contract

Defendants do not raise any arguments as to this cause of action that were not also raised in opposition to enforcement of the SLMA's forum-selection clause. In analyzing that issue, the Court considered and rejected each of Defendants' arguments for dismissal. *See* Section II.B., *supra.* For those same reasons, Defendants' motion to dismiss the breach of contract claim under Rule 12(b)(6) is similarly **DENIED**.

Based on the foregoing, the Court **DENIES** Cadence's motion to supplement the record. Further, Defendants' motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) is **DENIED**. The Court sets a further case management conference for **April 2, 2026**, at **10:00 a.m**. The parties shall file a joint case management statement by no later than **noon** on **March 26, 2026**.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2026 WL 751167

### CONCLUSION

Footnotes

1    Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2    As the Ninth Circuit noted in *Briskin*, the Court may consider a combination of contacts with the forum and purposeful direction to establish personal jurisdiction. 135 F.4th at 751 n.10. Jurisdictional discovery indicates Defendants had some contacts with the forum through contracts to market their products via social media. *See* Dkt. Nos. 79-11, 79-13 (contracts for advertising of Narwal products in the United States). These contacts bolster, but are not necessary for, the Court's jurisdictional holding.

3    Separately, the Court notes the question of consent to personal jurisdiction via the forum-selection clause is intertwined with the merits of Cadence's breach of contract claim. Under such circumstances, the Ninth Circuit has instructed that it is preferable to resolve the jurisdictional question following discovery, and require only a *prima facie* showing of jurisdictional facts at the motion to dismiss stage. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) ("Accordingly, where the jurisdictional facts are enmeshed with the merits, the district court may decide that the plaintiff should not be required in a Rule 12(d) preliminary proceeding to meet the higher burden of proof which is associated with the presentation of evidence at a hearing, but rather should be required only to establish a *prima facie* showing of jurisdictional facts with affidavits and perhaps discovery materials.").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.