UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., | Case No. 24-cv-07031-PCP |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| INTELLIGENT AUTOMATION (ZHUHAI) CO., LTD., | Re: ECF No. 91 |
| Defendant. | |

Plaintiff Cadence Design Systems, Inc. makes and sells software used in the design and production of semiconductors. Cadence accuses defendant Intelligent Automation (Zhuhai) Co., Ltd., a subsidiary Chung Yang Intelligent Automation Co., Ltd. ("CYGIA"), of copyright infringement, circumvention of copyright protection systems, and breach of contract. CYGIA now moves to dismiss Cadence's complaint for failure to state a claim. For the reasons stated below, CYGIA's motion to dismiss is denied.

**BACKGROUND**

Cadence is a Delaware corporation with its principal place of business in San José, California.[1] Cadence creates electronic design automation software and engineering tools for use in making semiconductor chips. Cadence alleges that it owns registered copyrights on software including "Allegro, OrCAD, PSpice, Sigrity, [and] Clarity 3D Solver." Complaint ¶¶ 43, 45–62. Cadence's software includes "technological measures and anti-piracy tools designed to track unauthorized use." Complaint ¶ 63. Through these means, Cadence can "detect unauthorized alterations or uses of Cadence Software." Complaint ¶ 64.

---

[1] For the purposes of CYGIA's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Cadence's complaint.

United States District Court
Northern District of California

CYGIA is a Chinese corporation with its principal place of business in Zhuhai, China. Using its "compliance monitoring measures" including its Cadence License Manager software, Cadence alleges that CYGIA used Cadence software without Cadence's permission and modified Cadence's monitoring software to evade Cadence's restrictions. The specific software Cadence accuses CYGIA of using are Allegro 16.5, Allegro 16.6, Allegro 17.2, Allegro 17.4, Clarity 3D Solver 2019, OrCad 16.5, OrCad 16.6, OrCad 17.2, PSPICE 17.2, PSPICE 17.4, Sigrity 2016, Sigrity 2017, and Sigrity 2019. For each of these programs, Cadence alleges that it owns a valid copyright. Cadence alleges that that were "at least 395,000 uses" of the software by CYGIA "on at least 443 machines … without a valid license." Complaint ¶ 66. Cadence alleges that domains linked to CYGIA, including "'intelligent.cn,' 'szintelligent.local,' and 'intelligentgroup.cn' are[, in turn,] linked to the machines bypassing technological measures in the Cadence Software." Complaint ¶¶ 68-72. Cadence alleges that email addresses with the domains "@cygia.com" and "@intelligentgroup.cn," which are controlled by CYGIA, "are also linked to the machines bypassing technological measures in Cadence Software." Complaint ¶¶ 72-75. According to Cadence, computers associated with CYGIA have "used, accessed, and/or copied 'cracked' Cadence Software at multiple IP addresses in California," including several specific IP addresses. Complaint ¶ 75. CYGIA's website has purportedly "publicly tout[ed]" using Cadence software "despite not having a license to do so." Complaint ¶ 78.

Cadence alleges three causes of action: copyright infringement, circumvention of copyright protection systems, and breach of contract stemming from CYGIA's breach of Cadence's terms of use. Cadence requests preliminary and permanent injunctive relief, actual or statutory damages, an accounting of CYGIA's profits, return of all copies of Cadence's works, restitution, fees and costs, interest, and any other appropriate relief, as well as a jury trial. CYGIA moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for judicial notice of four facts.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil

United States District Court
Northern District of California

Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

### I.    Request for Judicial Notice

Federal Rule of Evidence 201(b) permits judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may take notice of "*undisputed* matters of public record," but not of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

CYGIA requests judicial notice of four facts: 1) "that '.cn' domain names are country code top-level domains assigned to China," 2) Cadence's privacy policy, 3) that Cadence "publicly represents on its website that the Allegro X Free Viewer is available 'without a license,'" and 4) that Cadence's website represents that its OrCAD X Free Viewer is available "without a license."

3

Dkt. No. 91-3, 91-4, -5, -6, -7. Cadence opposes, arguing that the usage of ".cn" domain names is "irrelevant" because the names do not "establish use solely in China," that the Court may only "take judicial notice of facts, not documents," and that the free viewer versions of the Allegro X and OrCAD software are not at issue here. Opposition at 19-20.

Each of the requests for judicial notice is granted. CYGIA seeks notice of facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court, however, will take notice of only the specific facts CYGIA has identified and will not infer any further facts of legal conclusions from those facts.

## II.    Copyright Infringement

CYGIA first argues that Cadence's copyright infringement claim fails to state a claim because it is not plausible. Specifically, CYGIA argues that Cadence's pleadings are "simply conclusory claims, without reference to what was infringed, when, where or by whom, and are [therefore] not enough." Motion to Dismiss at 6.

"A valid claim for copyright infringement requires (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (quotation marks omitted). The second element, copying, has "two separate components: 'copying' and 'unlawful appropriation.'" *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Computer programs can receive federal copyright protection. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 20–21 (2021) (discussing 17 U.S.C § 107). A copyright owner has the exclusive right to reproduce their work, "prepare derivative works," and "distribute copies" of the work. 17 U.S.C. § 106(1)–(3). When a defendant creates a copy of software on their own device, the "copy potentially infringes unless the player (1) is a licensee whose use of the software is within the scope of the license or (2) owns the copy of the software." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 938 (9th Cir. 2010).[2]

---

[2] Although CYGIA suggests that Rule 9(b) applies to Cadence's claims, that rule applies only to claims sounding in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Cadence does not allege that CYGIA engaged in deceitful conduct or made misrepresentations in the course of infringing Cadence's copyrights, circumventing Cadence's copyright protection systems, or breaching any

United States District Court
Northern District of California

4

Cadence has plausibly stated a claim for copyright infringement. First, Cadence has plausibly alleged ownership of registered copyrights for each of the allegedly infringed software. *See United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (citing 17 U.S.C. § 410(c)). Second, Cadence has plausibly alleged copying by CYGIA. When a defendant uses a copy of software, the copy "potentially infringes unless the [user] (1) is a licensee whose use of the software is within the scope of the license or (2) owns the copy of the software." *See MDY Indus.*, 629 F.3d at 938. Cadence alleges that CYGIA is neither. Users of Cadence software "must install the [Cadence] License Manager directly on that computer." Complaint ¶¶ 93–100. Cadence alleges that users "subject to the control of CYGIA" who "downloaded, modified, used, and/or otherwise copied and installed Cadence Software" did so "without permission or authorization." Complaint ¶ 86. Cadence also alleges that CYGIA used specific Cadence software without Cadence's permission, Complaint ¶¶ 45, 65, 94, 99, including "at least 395,000 [illicit] uses … on at least 443 machines … without a valid license." Complaint ¶ 66. Cadence identifies emails or IP addresses associated with CYGIA that allegedly used Cadence's software without the required license. Complaint ¶¶ 68-72, 75.

CYGIA faults Cadence for failing to allege "which specific piece or pieces of software CYGIA infringes" and merely claiming that "CYGIA has used at least one of thirteen different pieces of software without authorization." Motion to Dismiss at 6. But Cadence alleges that CYGIA used *all* of the thirteen listed software programs. Cadence's pleadings are not conclusory because they allege facts that support an inference of usage without authorization by CYGIA, including that IP addresses related to CYGIA used Cadence software. *See* Complaint ¶¶ 34, 35, 75, 76. On a motion to dismiss, taking all factual inferences in favor of Cadence, Cadence has plausibly alleged that CYGIA used Cadence's software "without authorization."

CYGIA separately contends that Cadence's copyright claim should be dismissed because the Copyright Act does not apply extraterritorially and Cadence purportedly alleges only extraterritorial conduct. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 562 (2013)

contract. Thus, only Rule 8 and Rule 12 are at issue here.

5

United States District Court
Northern District of California

United States District Court
Northern District of California

(Ginsburg, J., dissenting) ("The Copyright Act, it has been observed time and again, does not apply extraterritorially."); *but see id.* at 532 (qualifying the general understanding that copyright laws do not apply extraterritorially). Cadence, however, alleges that multiple instances of copyright infringement occurred in the United States. For example, Cadence pleads that it "has detected at least six different computers that have connected to CYGIA's intelligent.cn computer domain while using pirated Cadence Software on IP addresses associated with a market leading technology company in this District in California." Complaint ¶ 35; *see also id.*¶ 34. Cadence alleges elsewhere in its complaint that computers "associated with the domain 'intelligent.cn' have used, accessed, and/or copied 'cracked' Cadence Software at multiple IP addresses in California," identifying the IP addresses and alleging that those addresses "are assigned to a market leading technology company in California with whom CYGIA maintains a commercial relationship." Complaint ¶¶ 75, 76. Cadence pleads "[o]n information and belief … [that] CYGIA has modified the Cadence License Manager and/or Cadence Software and/or knowingly used copies of Cadence Software that has been tampered and or 'cracked' to circumvent Cadence's License Manager and other access control mechanisms at IP addresses located in California and elsewhere." Complaint ¶ 99. While CYGIA argues that Cadence does not allege precisely "what software was allegedly 'used' in the U.S. (if any)," such detail is not required to survive a motion to dismiss.

CYGIA's motion to dismiss Cadence's copyright infringement claim is therefore denied.

## II. Circumvention of Copyright Protection Systems

17 U.S.C. § 1201(a)(1)(A) provides, "No person shall circumvent a technological measure that effectively controls access to a work protected" by copyright law. *See MDY Indus.*, 629 F.3d at 944; *see also id.* at 942. To "'[c]ircumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Thus, pleading a circumvention claim requires alleging, first, that the technological measure protects a copyrighted work; second, that "a technological measure" such as a licensing system controls access to that work; and third, that the defendant circumvented that measure. *See Synopsys, Inc. v. Library Techs., Inc.*, 2022 WL 783898, at *2 (N.D. Cal. Mar. 15,

6

2022).

Cadence has pleaded all three elements of its circumvention claim. First, Cadence alleges that its programs are protected by federal copyright law. *See* Complaint ¶¶ 45-62, 94. Second, Cadence alleges that the "Cadence License Manager and Cadence Software employ technological mechanisms that effectively control access to Cadence's copyrighted works, including those referenced in paragraphs 45 through 62." Complaint ¶ 94. Cadence alleges that users of its software "must install the License Manager directly on [their] computer" and that the "license file is a data file that indicates to the License Manager how many licenses are available for use at the client machines, and which Cadence Software and additional functionality the user is permitted to use." Complaint ¶¶ 95-96. Third, Cadence alleges that CYGIA circumvented Cadence's technological access control measure, claiming that "CYGIA has circumvented Cadence's access control measures by, *inter alia*, using cracked versions of Cadence Software and the Cadence License Manager with pirated license files." Complaint ¶ 98. Cadence pleads, "[o]n information and belief, [that] CYGIA has modified the Cadence License Manager and/or Cadence Software and/or knowingly used copies of Cadence Software that had been tampered and or 'cracked' to circumvent Cadence's License Manager and other access control mechanisms." Complaint ¶ 99.

CYGIA argues that Cadence's pleadings are conclusory because Cadence fails to allege the specific steps taken by CYGIA (or someone else) to modify the Cadence License Manager or Cadence software. While some of Cadence's allegations are general, Cadence has alleged sufficient factual material to state a claim, including that individuals associated with CYGIA used Cadence software without authorization or through "tampered and or 'cracked'" versions of Cadence software. *See, e.g.*, Complaint ¶ 99. Cadence does not allege merely that CYGIA circumvented Cadence's technological measures, which would be conclusory. Instead, Cadence pleads that CYGIA used improperly altered versions of Cadence's software.

CYGIA also argues that CYGIA only used "cracked" versions of Cadence software that a third party had already "decrypted and unlocked." Reply at 8. But the text of 17 U.S.C. § 1201(a)(1)(A) does not require that the party circumventing the technological measure effectuated the means of circumvention itself, only that the party circumvented the measure,

7

providing that "[n]o person shall circumvent a technological measure that effectively controls access to" protected works. Cadence alleges that CYGIA used tampered versions of Cadence software to avoid Cadence's License Manager. *See, e.g.*, Complaint ¶¶ 75, 99.

CYGIA also argues that any alleged circumvention "would have occurred outside the United States." Motion to Dismiss at 12. But Cadence alleges CYGIA "modified the Cadence License Manager and/or Cadence Software and/or knowingly used copies of Cadence Software … at IP addresses located in California and elsewhere." Complaint ¶ 99; *see also id.* ¶ 75.

Accordingly, Cadence's complaint states a claim for circumvention.

## III.    Breach of Contract

Cadence alleges that it entered into an enforceable "clickwrap" agreement with CYGIA and that CYGIA breached that agreement through its unauthorized use of Cadence's software. According to Cadence, its Software License and Maintenance Agreements (SLMAs) would necessarily have been "presented to CYGIA during its installation of pirated Cadence software on its computers." Complaint ¶ 121. Cadence alleges that a user of Cadence software would have thus been presented with a scrollable text box containing Cadence's SLMAs. Cadence does not appear to require users to scroll through the SLMAs before clicking "I accept the terms of the license agreement" or "I do not accept the terms of the license agreement." Nonetheless, users must affirmatively note their agreement to the SLMAs' terms before using the software.

An enforceable electronic contract may be formed when "(1) the [offeror] provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). "The most straightforward application of these [contract] principles in the online world involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

In arguing that Cadence's breach of contract claim should be dismissed, CYGIA first argues that Cadence cannot allege both that CYGIA entered into a licensing agreement and that

United States District Court
Northern District of California

CYGIA used Cadence software "without any valid license." Motion to Dismiss at 13 (discussing Complaint ¶ 136). But there is no logical inconsistency in alleging that CYGIA both entered into a licensing agreement with Cadence and then took infringing actions not covered by a valid license. *See MDY Indus.*, 629 F.3d at 939–40 ("To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution).").

Nor can defendants successfully argue that they did not provide consideration for Cadence's click-through SLMA. Cadence alleges that CYGIA or any other user of Cadence software could use Cadence's software only if they agreed to be bound by the software license. CYGIA allegedly received the benefit of the license's bargain—use of the software—without complying with the terms of that contract. CYGIA's argument would suggest that a party could agree to pay someone else consideration for a specific service, avail themselves of that service, then refuse to pay and argue that there was no valid contract because there was no payment of consideration.[3]

Second, CYGIA argues that there was no "mutual assent" between it and Cadence because Cadence does not allege "that it offered a contract to CYGIA" but merely that CYGIA downloaded Cadence's software without permission. Motion to Dismiss at 14. Although the parties may not have manifested their assent in the traditional manner involving a direct transaction with Cadence, "[a] party may manifest assent through conduct. … To do so, the party must intend the conduct and know, or have reason to know, the other party may infer her assent from the conduct." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). Here, CYGIA's use of Cadence's software after being presented with the terms of the SLMAs is

---

[3] CYGIA argues in a footnote that, because the SLMAs apply to "Orders of Licensed Materials," "invoices," "quotes," and "purchase order[s]," and because Cadence does not allege that CYGIA made orders, invoices, or purchase orders, those terms "indicate [unmet] conditions precedent to the SLMAs." Motion to Dismiss at 15 n.8. But California courts do not conclude that contractual terms are conditions precedent in the absence of plain language so indicating. *See, e.g.*, *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1010 (2012). The SLMAs attached to Cadence's complaint do not clearly show that the listed definitions are conditions precedent nor that they exempt defendants from the SLMAs' terms.

9

sufficient to infer its assent, and Cadence's presentation of the SLMAs to CYGIA as a condition of using the software is sufficient to infer its assent to CYGIA's use.

Third, and similarly, CYGIA argues that Cadence never actually made an offer to CYGIA because CYGIA merely used "'modified' or 'tampered' software … obtained from unauthorized third-party distributors." Reply at 10–11. But Cadence alleges that CYGIA would necessarily have seen the SLMAs before CYGIA and its agents could have used Cadence's software, and those SLMAs constituted an offer by Cadence to permit use of its software under the terms provided therein. Complaint ¶ 121. Drawing all factual inferences in Cadence's favor, Cadence offered what appears to be a clickwrap agreement sufficient to render its SLMAs an enforceable contract.

## CONCLUSION

For the reasons stated above, CYGIA's motion to dismiss is denied and its request for judicial notice is granted.

**IT IS SO ORDERED.**

Dated: June 29, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

10